**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| Great American Alliance Insurance Company, <br><br> Plaintiff, <br><br> v. <br><br> Willie Turral Food Services, LLC, Willie Turral, Quinnetta Clark, Megan Mallory, Shantae Smith, Sundeya Clark, Brittany Smalls, Tenisha James, Akeeylah Torrence, Bernice Wright, James Wright and Dawnavan Chapel as Personal Representative of the Estate of Chiraad Smalls, <br><br> Defendants. | **COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT** <br><br> C.A. No. 9:26-cv-02080-BHH <br><br> (Non-Jury) |

Plaintiff Great American Alliance Insurance Company, by and through its undersigned counsel, complaining of Defendants, would respectfully allege and show unto the Court as follows:

**NATURE OF ACTION**

1.     This action is brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. There is a real and justiciable controversy between the parties, the parties are interested parties, and Plaintiff Great American Alliance Insurance Company ("GAAIC") asks the Court to declare the rights and obligations of the parties.

2.     The Court's declaration will confer certainty on the parties and serve the interests of justice.

**PARTIES, JURISDICTION & VENUE**

3.      GAAIC is an insurance company organized and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio. GAAIC issues insurance policies in South Carolina and insures property and interests located within South Carolina.

4.      According to publicly available records, Defendant Willie Turral Food Services, LLC ("Turral Food Services") is a limited liability company formed under the laws of the State of South Carolina, with its principal place of business in Beaufort County, South Carolina. Upon information and belief, Turral Food Services operates Willie's Breakfast Bar and Grill, sometimes referred to as "Willie's," "Defendant Bar," or "Willie's Bar and Grill" (referred to herein as "Willie's Bar and Grill").

5.      At the time of the events giving rise to this action, Willie's Bar and Grill was located at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, Beaufort, South Carolina.

6.      Upon information and belief, Turral Food Services leased/rented from James Wright and Bernice Wright ("the Wrights") the property/building where Willie's Bar and Grill operated.

7.      Upon information and belief, Willie Turral ("Turral") is a citizen and resident of Beaufort County, South Carolina and was a member or manager of Turral Food Services and operated Willie's Bar and Grill.

8.      Upon information and belief, Defendant Quinnetta Clark ("Q. Clark") is a citizen and resident of Beaufort County, South Carolina.

9.      Upon information and belief, Megan Mallory ("Mallory") is a citizen and resident of Beaufort County, South Carolina.

10.     Upon information and belief, Defendant Shantae Smith ("Smith") is a citizen and resident of Beaufort County, South Carolina.

2

11.     Upon information and belief, Defendant Sundeya Clark ("S. Clark") is a citizen and resident of Beaufort County, South Carolina.

12.     Upon information and belief, Defendant Brittany Smalls ("Smalls") is a citizen and resident of Beaufort County, South Carolina.

13.     Upon information and belief, Defendant Tenisha James ("James") is a citizen and resident of Beaufort County, South Carolina.

14.     Upon information and belief, Akeeylah Torrence ("Torrence") is a citizen and resident of Beaufort County, South Carolina.

15.     Upon information and belief, the Wrights are citizens and residents of Beaufort County, South Carolina.

16.     Upon information and belief, Dawnavan Chapel as Personal Representative of the Estate of Chiraad Smalls ("Chapel") is a citizen and resident of Beaufort County, South Carolina and decedent Chiraad Smalls ("C. Smalls") was a citizen and resident of Beaufort County, South Carolina at the time of his death.

17.     This declaratory judgment action arises out of claims made by Q. Clark, Smith, S. Clark, Smalls, James, Mallory, Chapel as Personal Representative of the Estate of C. Smalls, Torrence and the Wrights against Turral and/or Turral Food Services in lawsuits filed in the Beaufort County Court of Common Pleas ("the Underlying Actions"). A true and accurate copy of each lawsuit is attached as **Exhibit A** (Q. Clark, Amended Complaint), **Exhibit B** (Wright, Answer to Q. Clark Amended Complaint and Crossclaims), **Exhibit C** (Mallory Complaint), **Exhibit D** (Smith Complaint), **Exhibit E** (S. Clark, Complaint), **Exhibit F** (Smalls, Complaint), **Exhibit G** (James, Complaint), **Exhibit H** (Torrence, Complaint) and **Exhibit I** (Chapel, Complaint) the allegations of which are incorporated herein by reference.

3

18.     Jurisdiction exists because there is complete diversity of citizenship between GAAIC and Defendants, and the amount in controversy, including the potential costs of defending and indemnifying any potential insureds in the Underlying Actions, potentially exceeds $75,000.00. Thus, this Court has jurisdiction based upon 28 U.S.C. § 1332(a).

19.     This Court has personal jurisdiction over the Defendants because the Plaintiffs in the Underlying Actions have brought claims against Turral and/or Turral Food Services in the State of South Carolina.

20.     Venue is appropriate under 28 U.S.C. § 1391 because this lawsuit seeks a declaration from the Court regarding rights and obligations under an insurance policy GAAIC issued to Turral Food Services, located in Beaufort County, South Carolina.

## FACTUAL BACKGROUND

**A.     The Underlying Actions**

21.     This declaratory judgment action arises out of a series of lawsuits involving injuries Defendants Q. Clark, Mallory, Smith,  S. Clark, Smalls, James, C. Smalls and Torrence allegedly sustained during a shooting that took place at Willie's Bar and Grill on October 11, 2025[1] and/or October 12, 2025 ("the Underlying Actions").

22.     Upon information and belief, on or about March 31, 2025, the Wrights leased the property/building where Willie's Bar and Grill was located at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, South Carolina to Turral Food Services.

---

[1] Defendants S. Clark, Smith, Smalls, James and Torrence allege the shooting took place on October 11, 2025. Defendants Q. Clark, Mallory and Chapel as Personal Representative of the Estate of C. Smalls allege it took place on October 12, 2025. It appears the correct date is October 12, 2025.

### 1.    The Q. Clark and Megan Mallory Actions

23.    In their lawsuits, Q. Clark and Mallory allege that Turral Food Services operated a bar and nightclub known as "Willie's Breakfast Bar and Grill" at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, South Carolina ("the Premises"). *See* Q. Clark Amended Complaint, Exhibit A, ¶ 3; Mallory Complaint, Exhibit C, ¶ 3.

24.    Q. Clark and Mallory allege that the Wrights owned, controlled, and operated the real property located at 7 Dr. Martin Luther King, Jr. Drive, St. Helena Island, South Carolina, on or about October 12, 2025. *See id.,* ¶ 4.

25.    Q. Clark and Mallory allege that on the night in question, October 12, 2025, they were invitees at an alumni tailgate event that was hosted, held at, and/or promoted in connection with Willies' Bar and Grill at the Premises. *See id.,* ¶¶ 10, 11.

26.    Q. Clark and Mallory allege they sustained injuries when they were struck by a bullet after a violent altercation broke out at the Premises, resulting in firearms being discharged where Willie's Bar and Grill was operating. *See id.*, ¶¶ 16, 17, 20.

27.    Q. Clark and Mallory assert a number of causes of action against Turral, Turral Food Services, and/or the Wrights and others including (1) violation of S.C. Code Ann. § 61-4-580, § 61-6-220; dram shop liability; negligence per se[2]; (2) negligence, gross negligence, and premises liability; (3) negligent supervision; negligent undertaking; negligent entrustment of event operations; (4) joint venture/joint enterprise; agency; apparent authority; vicarious liability[3]; and (5) negligence per se; statutory and regulatory violations relating to public safety. *See id.*, Amended Complaint, Exhibit A; Complaint, Exhibit C.

---

[2] This cause of action is not asserted against the Wrights.
[3] This cause of action is not asserted against the Wrights.

28.     Q. Clark and Mallory allege that Turral and Turral Food Services violated various South Carolina statutes applying to the service and furnishing of alcohol and allowed patrons to become intoxicated on the Premises; continued to serve alcohol after they knew patrons were intoxicated; failed to train bartenders and staff to identify intoxication and to refuse service when required by law; failed to supervise alcohol service; and failed to implement reasonable crowd monitoring and intervention practices when intoxicated persons were engaged in aggressive or escalating conduct, causing them to sustain injuries. *See id.*, ¶¶ 36, 41.

29.     In addition, Q. Clark and Mallory allege Turral, Turral Food Services, the Wrights and others failed to take reasonable precautions to prevent shootings and violent acts; failed to provide, hire, schedule, train and/or require adequate security personnel for the Premises and event; failed to implement reasonable weapons deterrence measures; failed to implement and enforce effective crowd control, occupancy and admission practices; failed to monitor the Premises and identify escalating conflicts and aggressive behavior before violence erupted; failed to intervene, de-escalate, remove aggressors and/or contact law enforcement promptly; failed to warn patrons; conducted business and/or hosted/promoted events in a manner that created a foreseeable risk of harm to patrons; created, permitted, and/or tolerated an unsafe environment conducive to violent crime; and failed to adopt and enforce reasonable safety policies for events where alcohol is served and large crowds gather, causing them to sustain bodily injuries. *See id.*, ¶¶ 50, 53.

30.     Q. Clark and Mallory allege Turral, Turral Food Services, the Wrights and others breached their duties to her by allowing and/or entrusting event promotion and operational control to individuals without ensuring reasonable safety planning and security measures; failing to supervise or require supervision of event operations affecting patron safety; failing to require adequate security, crowd control, and incident response planning; failing to coordinate or ensure

6

coordination with law enforcement where reasonably necessary; failing to ensure reasonable policies governing admission monitoring, and removal of aggressors; and failing to ensure reasonable safety measures commensurate with known risks. *See id.*, ¶¶ 68, 70.

31.    Q. Clark and Mallory also allege the promoters of the event, who they have included as defendants in the Underlying Action, acted as agents, servants, employees or apparent agents of Turral and Turral Food Services and/or were joint venturers engaged in a common enterprise. *See* Amended Complaint, Ex. A, ¶ 76; Complaint, Exhibit B, ¶ 76. They further allege that Turral and Turral Food Services are vicariously liable for the promoters' negligent acts and omissions undertaken with actual or apparent authority and/or in furtherance of the joint venture. *See id.*, ¶ 77.

32.    Q. Clark and Mallory allege Turral, Turral Food Services, the Wrights and others violated one or more of South Carolina's statutes governing alcohol service, public safety and operations of alcohol-serving establishments intended to protect members of the public from foreseeable harms including violence, injury, and disorder associated with intoxication, unsafe operations and inadequate controls. They allege they sustained injuries due to the defendants' conduct and seek actual and punitive damages. *See id.*, ¶¶ 82, 88.

33.    Q. Clark and Mallory allege Turral, Turral Food Services, the Wrights and others violated duties under S.C. Code Ann. §§ 61-4-580 and 61-6-2220 and other safety standards associated with operating a public venue. *See id.*, ¶¶ 83, 84.

34.    Q. Clark and Mallory allege they are entitled to punitive damages against Turral, Turral Food Services, the Wrights and others because their actions show willful misconduct, wantonness, recklessness, malice, fraud, oppression and an entire want of care, which would raise

the presumption of conscious indifference to consequences and/or specific intent to cause harm. *See id.*, ¶ 92.

35. The Wrights have crossclaimed against Turral Food Services for breach of contract and indemnity. *See* Exhibit B.

### 2. The Smith, S. Clark, Smalls, James and Torrence Actions

33. Defendants Smith, S. Clark, Smalls, James and Torrence allege they were present at Willie's Bar and Grill, located at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, South Carolina, on October 11, 2025. *See* Complaints, Exhibits D-H, ¶¶ 3, 7.

34. Smith, S. Clark, Smalls, James and Torrence allege that on the date in question, Aferney Freeman ("Freeman") consumed alcohol at Willie's Bar and Grill where he became intoxicated. *See id.*, ¶ 12-13. They allege he used a firearm while he was there, shooting numerous patrons, including Smith, S. Clark and James. *See* Complaints, Exhibits D, E, G, H, ¶ 15. Smalls alleges she was injured when she tripped and fell while trying to escape the shooting. *See* Complaint, Exhibit F, ¶ 16.

35. Smith, S. Clark, Smalls, James and Torrence assert three causes of action against Turral Food Services, the only defendant in the lawsuits, for (1) negligence/negligence per se; (2) negligence/gross negligence/recklessness; and (3) negligent security. *See* Complaints, Exhibits D-H.

36. Smith, S. Clark, Smalls, James and Torrence allege Turral Food Services was negligent, grossly negligent, careless, reckless willful and wanton in the following particulars: serving alcohol to Freeman when it knew or should have known that he was intoxicated in violation of the common law and statutory laws of the State of South Carolina; serving alcohol to Freeman in an amount causing him to become intoxicated in violation of the common law and statutory laws of the State of South Carolina; failing to appreciate Freeman's intoxication while being served

alcohol and for failure to remove him from the Premises; failing to ensure, after serving Freeman alcohol, that he would not be a danger to invitees; failing to properly and adequately supervise employees, bartenders, and wait staff with regard to the proper service of alcohol; failing to adequately and properly monitor the activities of its employees, waitstaff, bartenders and servers in the service of alcohol to Freeman; failing to sufficiently train employees in their duties with regard to the service of alcohol to the general public; failing to implement and maintain policies and procedures necessary for the reasonable service of alcohol to the general public; deviating from the accepted standards of care in the service of alcohol to intoxicated persons; creating an atmosphere of encouraging the consumption of excessive amounts of alcohol; allowing Freeman to remain on the Premises while in a dangerous state or condition; failing to observe or supervise Freeman to ensure he would not cause harm or injury to innocent third person, including Plaintiffs; and failing to warn Plaintiffs and other innocent third persons of Freeman's intoxication and danger. *See id.*, First Cause of Action.

37.     Smith, S. Clark, Smalls, James and Torrence allege Turral Food Services' conduct caused their injuries and damages. *Id.*

38.     Smith, S. Clark, Smalls, James and Torrence further allege they were invitees of Willie's Bar and Grill, that Turral Food Services had a duty to protect them and make the Premises safe for its use as a bar. *See id.*, Second Cause of Action.

39.     They allege Turral Food Services knew or should have known that intoxicated patrons posed a danger to innocent third persons, yet despite this knowledge, did not properly or adequately ensure the safety of its business invitees. *Id.*

40.     Smith, S. Clark, Smalls, James and Torrence allege Turral Food Services created and maintained the dangerous conditions on the Premises, did not warn them of the conditions, and did not eliminate the conditions, resulting in their damages. *Id.*

41.     Smith, S. Clark, Smalls, James and Torrence further allege Turral Food Services failed to provide competent security for the Premises; failed to warn, protect, guard and secure the safety of patrons, including Plaintiffs, when it knew or should have known that the subject premises had a history of similar criminal acts; failed to police, patrol, guard, deter and otherwise provide adequate protection when it knew or should have known of foreseeable criminal acts on persons; failed to prepare and/or implement and/or properly implement adequate security policies, security measures and security procedures necessary to protect Plaintiffs and others on the Premises; failed to take additional security measures after being put on notice that the security measures in force were inadequate; failed to adequately provide an overall security plan that would meet known industry standards and customs for safety in the community; failed to hire persons, employees, companies or agents reasonably suited for providing, implementing and maintaining property security measures adequate to ensure the safety of its patrons, including the area of the Premises where the subject incident occurred; failed to intervene in the assault on Plaintiffs; failed to stop Freeman from committing a mass shooting; failed [sic] to allow Freeman on the Premises with a firearm; and failed to properly train its employees/agents in a reasonable manner. *See id.*, Third Cause of Action.

42.     Smith, S. Clark, Smalls, James and Torrence allege the conduct of Turral Food Services was the direct and proximate cause of their injuries and damages. *Id.*

43.     Smith, S. Clark, Smalls, James and Torrence seek actual and punitive damages from Turral Food Services. *See* Complaints, Exhibits D-H.

### 3. The Chapel Action

44. Defendant Chapel alleges she is the duly appointed Personal Representative of the Estate of C. Smalls. Exhibit I, ¶ 1.

45. Chapel alleges that Turral Food Services operated Willie's Bar and Grill at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, South Carolina as a bar and nightclub. *Id.*, ¶ 5.

46. Chapel alleges the Wrights owned and controlled the real property located at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, South Carolina. *Id.*, ¶ 6.

47. Chapel alleges that on October 12, 2025, C. Smalls was an invitee at Willie's Bar and Grill where he was attending an alumni event for a local high school. *Id.*, ¶ 14.

48. Chapel alleges that while the event was occurring, a violent altercation took place in which multiple people discharged firearms, including an employee of Willie's Bar and Grill, during which C. Smalls was struck in the chest with a bullet and died. *Id.*

49. Chapel alleges that the shooting took place on premises under the control of Turral, Turral Food Services and the Wrights, from conditions they knew or should have known, would create a foreseeable risk of serious harm to individuals like C. Smalls. *Id.*, ¶ 15.

50. Chapel alleges Turral, Turral Food Services and the Wrights were negligent in failing to provide sufficient and adequate security; failing to take reasonable precautions to prevent shootings, despite actual and/or constructive knowledge of the danger; failing to properly secure the premises; failing to patrol the premises, including the parking lot; failing to properly and adequately staff the premises with trained, qualified, professional security services; failing to enact and adhere to reasonable security practices and procedures; failing to exercise reasonable care in hiring employees and independent contractors to monitor, direct, and/or oversee security of the premises; failing to properly train its employees; failing to have policies and procedure in place for monitoring activities

of patrons or if such policies and procedures existed, failing to follow them; failing to take reasonable measures to ensure the safety of the premises given the history or violence and criminal activity on the premises; failing to anticipate careless or criminal conduct on the part of third parties; failing to realize its conduct involved reasonable risks of harm through the conduct of a third person or persons; failing to provide appropriate services in response to an emergency incidents; operating a business and maintaining its premises in utter disregard for the safety of its invitees, specifically C. Smalls; and failing to exercise the degree of care which a reasonably prudent owner would exercise under the same or similar circumstances. *Id.*, ¶ 20.

51.     Chapel alleges Turral, Turral Food Services and the Wrights' conduct caused C. Smalls to suffer injuries, including severe physical and psychological limitations, embarrassment, anxiety, stress, emotional pain and suffering, substantial medical bills and other injuries up to the time of his death, entitling the recovery of damages under S.C. Code § 15-5-90. *Id.*, ¶ 21.

52.     Chapel alleges that Turral, Turral Food Services and the Wrights held themselves out to invitees as having exercised reasonable care in maintaining a safe premises and voluntarily undertook the obligation to provide adequate security. *Id.*, ¶ 24.

53.     Chapel alleges Turral, Turral Food Services and the Wrights had a duty to warn invitees, protect invitees, provide adequate security for invitees on the premises, and maintain the premises free of unreasonable and foreseeable hazards. *Id.*, ¶¶ 25, 26.

54.     Chapel alleges these defendants breached their duties *Id.*, ¶¶ 27 – 29.

55.     Chapel further alleges the Wrights failed to exercise reasonable and ordinary care in the leasing of the premises to Turral, and failed to exercise that degree of care that a reasonable landlord, lessor and or other person would exercise in the same or similar circumstances. *Id.*, ¶ 30.

12

56.     Chapel alleges that as a result of Turral's, Turral Food Services' and the Wrights' conduct, C. Smalls suffered severe physical and psychological limitations, embarrassment, anxiety, stress, emotional pain and suffering, substantial medical bills and other injuries up to the time of his death, entitling the recovery of damages under S.C. Code § 15-5-90. *Id.*, ¶ 31.

57.     Chapel alleges Turral and Turral Food Services were negligent in hiring, employing and or contracting through an agency relationship with personnel who were improperly trained, unlicensed or inadequately licensed, unsupervised, and who inadequately and with negligence failed to perform their jobs as security personnel and or employees. *Id.*, ¶ 36.

58.     Chapel alleges Turral and Turral Food Services operated the business as a bar/nightclub and sold alcohol to invitees for consumption. *Id.*, ¶ 40.

59.     Chapel alleges Turral and Turral Food Services overserved invites, including the assailants of the violent altercation, in violation of S.C. Code Ann §§ 61-4-580 and 61-6-2220. *Id.*, ¶ 41.

60.     Chapel alleges Turral and Turral Food Services breached their duty of care by over-serving intoxicated persons, failing to control escalating behavior and failing to implement adequate policies, training , supervision and security measures, causing him to suffer injuries up to the time of his death. *Id.*, ¶¶ 45, 46.

61.     Chapel has also asserted a wrongful death action against Turral, Turral Food Services and the Wrights pursuant to S.C. Code Ann. § 15-51-10 *et seq.*

62.     Chapel seeks actual and punitive damages from Turral, Turral Food Services and or the Wrights. *See* Complaint.

**B.     The Policy & Application**

63.     GAAIC issued a commercial general liability policy to Hospitality & Entertainment Trade Alliance under a Food Liability Insurance Program, bearing policy number PLF194992 for the policy period April 11, 2025 to April 11, 2026 ("the Master Policy"). A true and correct copy of the Master Policy is attached as **Exhibit J** and is incorporated herein by reference.

64.     GAAIC did not issue a liquor liability policy to Hospitality & Entertainment Trade Alliance.

65.     The Food Liability Insurance Program is an insurance program written for vendors, distributors and manufacturers of food products who are participating members of the Hospitality & Entertainment Trade Alliance.

66.     Each insurer in the Food Liability Insurance Program issues a master policy to the Hospitality & Entertainment Trade Alliance. Members can then apply for insurance coverage through the Food Liability Insurance Program and, if approved, become insureds under one or more master policy(ies) through a Certificate of Coverage.

67.     The Master Policy GAAIC issued to the Hospitality & Entertainment Trade Alliance through the Food Liability Insurance Program is designed to enroll through certificates, individuals or businesses that are smaller in nature and involved in operations that include, but are not limited to, concessionaires such as food trucks, food cart or food trailers, personal or private chefs, farmers' markets, and caterers.

68.     Turral Food Services is a member of the Hospitality & Entertainment Trade Alliance and applied for general liability coverage through the Food Liability Insurance Program. A true and accurate copy of Turral Food Services' application for insurance is attached as **Exhibit K** and incorporated herein by reference.

69.    In its application for insurance dated April 11, 2025, Turral Food Services answered "yes" when asked to confirm that it was not a "restaurant, café, bakery, tavern, bar, nightclub, dance club, social club or lounge." *See id*.

70.    Turral Food Services answered "yes" when asked to confirm that it did not "own, lease or rent a location where events are promoted or provide event promotion" and did not "work with or use event promoters or have any events where [it is] promoting or sponsoring any live entertainment." *See id.*

71.    Turral Food Services identified its business as "Private/Personal Chef," its business class as "Bartending Services," and answered "no" when asked whether it offered happy hour, multiple drink incentives, all you can drink specials, complimentary drinks, BYOB, bottle service and self-service. *See id*.

72.    The application for insurance identified a number of excluded products under the general liability coverage, including, but not limited to, the following: (1) alcoholic beverages or products (including serving, selling, or sub-contracting – covered by liquor liability policy); and (2) restaurant, café, bakery, tavern, or similar establishment, with operations where the applicant owns or leases the space where customers enter to purchase food/beverages. *See id*.

73.    Based on the representations in the application, GAAIC issued a Certificate Policy to "Willie Turral Food Services LLC" (Certificate Number F298624) for commercial general liability coverage – it did not issue a certificate policy for liquor liability coverage ("the Policy"). The business description on the Policy is described as "Private/Personal Chef." The Policy has limits of $1,000,000 per occurrence, $1,000,000 for personal and advertising injury, and a $2,000,000 general aggregate limit. A copy of the Policy issued to Turral Food Services is attached as **Exhibit L** and incorporated herein by reference.

15

74.     A copy of the Affidavit of Certified Master Policy and Turral Certificate Policy is attached as **Exhibit M**.

75.     GAAIC is defending Turral and Turral Food Services in the Underlying Actions under a full and complete reservation of rights.

76.     The Wrights have tendered defense and indemnity to GAAIC for the Q. Clark lawsuit. By letter dated May 21, 2026, GAAIC declined coverage to the Wrights in that action.

77.     A justiciable controversy exists between the parties in this action concerning whether coverage exists under the Policy for the damages alleged by the plaintiffs in the Underlying Actions.

78.     GAAIC seeks rescission of the Policy and a judicial declaration that the Policy does not provide coverage for the allegations and damages in the Underlying Actions and, therefore, GAAIC has no duty to defend or indemnify any insured in connection with the claims in the Underlying Actions.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
**(Rescission of the Policy)**

79.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

80.     The application for insurance completed by Turral Food Services on April 11, 2025, specifically provided that general liability coverage was not provided for a restaurant, café, bakery, tavern, or similar establishment, with operations where the applicant owns or leases the space where customers enter to purchase food/beverages.

81.     In the application, Turral Food Services described its business activities as "Private/Personal Chef," its business class as "Bartending Services," and answered "no" when asked whether it offered happy hour, multiple drink incentives, all you can drink specials, complimentary drinks, BYOB, bottle service, and self-service.

16

82.    In its application for insurance, Turral Food Services answered "yes" when asked to confirm that it was not a "restaurant, café, bakery tavern, bar, nightclub, dance club, social club or lounge."

83.    In its application for insurance, Turral Food Services also answered "yes" when asked to confirm that it did not "own, lease or rent a location where events are promoted or provide event promotion" and did not "work with or use event promoters or have any events where [it is] promoting or sponsoring any live entertainment."

84.    GAAIC had a right to rely on these representations and did, in fact, rely on them in agreeing to issue the Certificate of Coverage to Turral Food Services.

85.    Notwithstanding the representations made on the application, upon information and belief, Turral Food Services operated Willie's Bar and Grill as a bar and/or nightclub, and a restaurant where it served alcohol and food to customers and leased or rented the property/building where it conducted these activities.

86.    According to allegations Turral Food Services made in a complaint filed in the Beaufort County Court of Common Pleas on January 12, 2025, Turral Food Services leased the property located at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, South Carolina from the Wrights on or about March 1, 2025. A true and accurate copy of the complaint is attached hereto as **Exhibit N**.

87.    The lease agreement was entered into between the Wrights and Turral Food Services on March 31, 2025, prior to completing the application, and expressly enumerated the permissible uses of the Premises, one of which was "[r]estaurant, bar, and grill operations." A true and correct copy of the lease agreement is attached hereto as **Exhibit O**.

17

88. According to its social media posts, Willie's Bar and Grill held events and served food and alcoholic beverages at 7 Dr. Martin Luther King Jr. Drive, St. Helena Island, South Carolina on dates prior to the completion of the application. Copies of social media posts and information from Willie's Bar and Grill website are attached hereto as **Exhibit P**.

89. According to the "Willie's Breakfast Bar and Grill" Facebook account, it is "An authentic Restaurant proudly serving the Sea Island community." *See id*.

90. In a July 15, 2025 Facebook post, Willie's Breakfast Bar and Grill stated "We have been operating Willie's Breakfast Bar and Grill <u>for nearly three years</u>. . ." S*ee id.* (emphasis added).

91. On its website, "Willie's Breakfast Bar and Grill" is referred to as an "authentic Breakfast Restaurant. . ." *See id.*

92. According to information on the South Carolina Department of Revenue website, Turral Food Services had a business/restaurant liquor by the drink license, which license was revoked on or about December 11, 2025.

93. In a statement made after the shooting, Turral stated "After several years of serving as a gathering space, a restaurant, and a cultural touchstone in the Corners community, Willie's Bar & Grill will officially close its doors. . . ." https://www.wtoc.com/2025/11/19/willies-bar-grill-officially-closes-its-doors-owner-announces-new-learning-center/.

94. Turral Food Services knew, when it completed the application for insurance, that it operated a bar, tavern, or nightclub and restaurant at a location where it leased or rented space where customers entered to purchase food and beverages, precisely the type of business GAAIC unambiguously stated in the application that it would not insure. Despite this knowledge, Turral Food Services represented its business activity was "Private/Personal Chef" and stated that it was not a bar, tavern or restaurant.

95.     Turral Food Services' representations were made with the intent to deceive GAAIC so that it would issue the Policy to it.

96.     The misrepresentations were material to the risk, GAAIC had the right to rely on the statements made in the application, and GAAIC issued the Policy in reliance on them. Had GAAIC known the truth about the business operated by Turral Food Services, it would not have issued the Policy.

97.     Therefore, GAAIC is entitled to rescind the Policy based on the material misrepresentations made by Turral Food Services.

**FOR A SECOND CAUSE OF ACTION**
**(Declaration That There is No Coverage Under the Policy's**
**Coverage A and Coverage B Insuring Agreements)**

98.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

99.     The Insuring Agreement in the Policy for **Coverage A – Bodily Injury and Property Damage**, provides, in relevant part, as follows:

**SECTION I – COVERAGES**

**Coverage A – Bodily Injury and Property Damage Liability**

1. **Insuring Agreement**

   a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

19

100.    An Endorsement to the Policy entitled "**Limitation of Coverage to Designated Premises, Project or Operation**" changes subsection b. of the Insuring Agreement for **Coverage A – Bodily Injury and Property Damage** to the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

(1) The "bodily injury" or "property damage":

(a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

(b) Arises out of the project or operation shown in the Schedule;

(2) The "bodily injury" or "property damage" occurs during the policy period; and

101.    The Insuring Agreement for **Coverage B – Personal and Advertising Injury,** provides, in relevant part, as follows:

**SECTION I – COVERAGES**

**Coverage B – Personal and Advertising Injury Liability**

**1. Insuring Agreement**

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

102.    As was the case with Coverage A, the "**Limitation of Coverage to Designated Premises, Project or Operation**" Endorsement changes subsection b. of the **Coverage B – Personal and Advertising Injury** Insuring Agreement in the base form.

20

103.    The Endorsement provides in relevant part as follows:

b.      This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

(1) The offense arises out of your business:

(a) Performed on the premises shown in the Schedule; or

(b) In connection with the project or operation shown in the Schedule; and

(2) The offense was committed during the policy period.

104.    The Endorsement includes a Schedule to identify the premises or project or operation.

105.    There are no premises identified on the Schedule for the Endorsement.

106.    The project or operation on the Schedule states "Per Each Certificate of Coverage"

107.    The Certificate of Coverage on the front page of the Policy identifies the operations performed by the insured as "Private/Personal Chef."

108.    Under Coverage A, coverage is only provided for claims for bodily injury or property damage arising out of an occurrence that arises out of the "Private/Personal Chef" operations identified on the Certificate.

109.    The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

110.    The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

111.    The Policy defines "personal and advertising injury" as follows:

14. **"Personal and advertising injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a.  false arrest, detention or imprisonment;

b.  malicious prosecution;

21

**c.** the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** the use of another's advertising idea in your "advertisement"; or

**g.** infringing upon another's copyright, trade dress or slogan in your "advertisement".

112. No coverage is provided under Coverage A of the Policy because the Plaintiffs in the Underlying Actions do not make any claims in the Underlying Actions for bodily injury or property damage caused by an occurrence arising out of "Private/Personal Chef" operations.

113. To the extent that "Bartending Services" are considered to be an operation identified per the certificate on the front page of the Policy, no coverage is provided under Coverage A because the Plaintiffs in the Underlying Actions do not make any claims in the Underlying Actions for bodily injury or property damage caused by an occurrence arising out of "Bartending Services."

114. Coverage of the Policy B does not apply because there are no damages because of "personal and advertising injury" alleged in the Underlying Actions. Even if there were such damages, the personal and advertising injury, if any, arose out of restaurant, bar, tavern, or nightclub operations, not out of an offense arising out of "Private/Personal Chef" operations or "Bartending Services," if "Bartending Services" are considered to be an operation identified per the Certificate.

115. Because the Coverage A and Coverage B Insuring Agreements of the Policy are not satisfied under the facts alleged in the Underlying Actions, GAAIC is entitled to a declaration that it has no duty to defend or indemnify Turral, Turral Food Services or any other insured under the Policy in the Underlying Actions.

**<u>FOR A THIRD CAUSE OF ACTION</u>**
**Declaration that the "Assault and Battery Exclusion"**
**Endorsement Excludes Coverage)**

116.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

117.     The Policy contains an "**Assault and Battery Exclusion**" Endorsement which provides as follows:

**ASSAULT AND BATTERY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising from, based on or caused by:

1.  assault and/or Battery committed by any person;

2.  the failure of any person to suppress or prevent any assault or battery, or any act or omission in connection with the prevention or suppression of any Assault and/or Battery; or

3.  the negligent hiring, placement, supervision, employment or training of any employee or agent of the Insured with respect to the events described in **1.** or **2.**, above.

**This endorsement does not change any other provision of the Policy.**

118.     Upon information and belief, an altercation took place at Willie's Bar and Grill on October 11, 2025 or October 12, 2025, resulting in a shooting(s) at the Premises.

119.     Upon information and belief, the injuries sustained by the Plaintiffs in the Underlying Actions arose from, were based on, or caused by an assault and/or battery by an individual or individuals present at Willie's Bar and Grill on October 11, 2025 and/or October 12, 2025.

120.    Upon information and belief, Freeman has been arrested for the shooting and has been charged with four (4) counts of murder and fourteen (14) counts of assault and battery.

121.    Upon information and belief, the injuries sustained by the Plaintiffs in the Underlying Actions arose from, were based on, or caused by the failure of a person to suppress or prevent any assault or battery, or any act or omission in connection with the prevention or suppression of an assault and/or battery; or the negligent hiring, placement, supervision, employment or training of any employee or agent of the insured with respect to an assault and/or battery of the failure to suppress or prevent an assault and/or battery.

122.    Therefore, the Assault and Battery Exclusion operates to exclude coverage under the Policy and GAAIC has no duty to defend or indemnify Turral, Turral Food Services or any other insured under the Policy for the claims made by the Plaintiffs in the Underlying Actions.

**<u>FOR A FOURTH DEFENSE</u>**
**(Declaration that the Liquor Liability Exclusion**
**Excludes Coverage)**

123.    The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

124.    The Policy contains the following Liquor Liability Exclusion:

**1. Exclusions**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury or "property damage" for which any insured may be held liable by reason of:

**(1)** causing or contributing to the intoxication of any person;

**(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

24

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** the supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

125. Upon information and belief, Willie's Bar and Grill was in the business of selling, serving or furnishing alcoholic beverages and had a separate liquor liability policy issued to it by Certain Underwriters at Lloyd's London.

126. To the extent that the Plaintiffs in the Underlying Actions allege that Turral, Turral Food Services or any other insured are liable for their bodily injuries by reason of causing or contributing to the intoxication of any person; the sale of alcohol to underage persons; or a statute, ordinance or regulation relating to the sale, gift, distribution, or use of alcoholic beverages, coverage is excluded under the Policy.

127. Therefore, GAAIC has no duty to defend or indemnify Turral, Turral Food Services, or any other insured under the Policy for the claims made by the Plaintiffs in the Underlying Actions.

25

**FOR A FIFTH CAUSE OF ACTION**
**(Declaration that the "Exclusion – Designated Ongoing**
**Operations " Excludes Coverage)**

128.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

129.     The Policy contains an Exclusion entitled "**Designated Ongoing Operations**" which provides as follows:

**EXCLUSION - DESIGNATED ONGOING OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
**SCHEDULE**

**Description of Designated Ongoing Operation(s):**

Operations not in compliance with county, state, OR federal food and safety regulations;

Any of the following owned or operated by the Insured:

    * * *

Restaurant, café, bakery or brewery;
Bars, taverns, nightclubs, dance clubs, social clubs or lounges.

    * * *

**Specified Location (If Applicable)**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph **2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):**

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If the specific "location" is

26

designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location."

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street roadway waterway or right-of-way of a railroad.

130.    The Plaintiffs in the Underlying Actions allege their bodily injuries arose when they were patrons/invitees of Willie's Bar and Grill, which was operating as a bar and/or restaurant on the date in question.

131.    Under this Exclusion, coverage is excluded for bodily injuries arising out of the insured's operation of a restaurant, bar, tavern or similar establishment owned or operated by the insured.

132.    Therefore, GAAIC has no duty to defend or indemnify Turral, Turral Food Services, or any other insured under the Policy for the claims made by the Plaintiffs in the Underlying Actions because coverage is excluded under the Designated Ongoing Operations Exclusion.

## FOR A SIXTH CAUSE OF ACTION
### (Declaration that the Wrights are not Insureds Under the Policy)

133.    The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

134.    Section II – Who Is An Insured of the Policy provides in relevant part as follows:

1.  If you are designated in the Declarations as:

* * *

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

* * *

2.  Each of the following is also an insured:

27

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

\* \* \*

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

\* \* \*

135. The Wrights do not qualify as insureds under Section II - Who Is An Insured because they are not members, managers, employees, volunteer workers, or real estate managers of Turral Food Services.

136. The Wrights do not qualify as additional insureds under any of the additional insured endorsements in the Policy.

137. Specifically, the Policy contains three additional insured endorsements: (1) Additional Insured - Designated Person or Organization; (2) Additional Insured - Vendors; and (3) Additional Insured - Lessor of Leased Equipment – Automatic Status When Required in Lease Agreement With You.

138. The Wrights are not vendors nor are they lessors of leased equipment for which they are being held liable in the Underlying Actions for bodily injury or property damage caused in, whole or in part, by the maintenance, operation or use of equipment leased to Turral Food Services.

139. The Additional Insured – Designated Person or Organizations Endorsement in the Policy requires the Wrights to be expressly designated on the Certificate of Coverage issued to Turral Food Services. The Wrights are not listed on the Certificate of Coverage to the Policy. *See* **Exhibit L**.

28

140.    Therefore, GAAIC has no duty to defend or indemnify the Wrights for the claims made against them in any of the Underling Actions as they do not qualify as insureds or additional insureds under the Policy.

**FOR A SEVENTH CAUSE OF ACTION**
**(Declaration that No Coverage is Provided or Coverage is Excluded Under the Policy for the Claims Asserted against the Wrights in the Underlying Actions)**

141.    The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

142.    Even if the Wrights qualify as insureds or additional insureds under the Policy, which is denied, for the same reasons set forth above with regard to Turral and Turral Food Services, no coverage is provided under the Coverage A and Coverage B Insuring Agreements of the Policy and coverage is excluded under the Assault and Battery Exclusion Endorsement, the Liquor Liability Exclusion, and the Designated Ongoing Operations Exclusion Endorsement.

143.     Therefore, GAAIC has no duty to defend or indemnify the Wrights for the claims made against them in any of the Underlying Actions.

**WHEREFORE,** GAAIC prays for the following relief:

a.    Rescission of the Policy because Turral, on behalf of Turral Food Services, made material misrepresentations in the application for insurance and, therefore, there is no GAAIC policy of insurance that was in effect for Turral or Turral Food Services at the time of the claims alleged in the Underlying Actions;

b.    For a judicial declaration that the Wrights do not qualify as insureds or additional insureds under the Policy and, therefore, GAAIC has no duty to defend or indemnify them for the claims asserted against them in any of the Underlying Actions;

c.    For a judicial declaration that there is no coverage under Coverage A of the Policy for Turral, Turral Food Services, the Wrights (if they qualify as insureds) or anyone else seeking coverage

29

because the Plaintiffs in the Underlying Actions do not claim bodily injury caused by an occurrence arising out of "Private/Personal Chef" operations identified on the Certificate of Coverage for the Policy or "Bartending Services" to the extent that "Bartending Services" are considered to be operations of Turral Food Services;

d.    For a judicial declaration that there is no coverage under Coverage B of the Policy for Turral, Turral Food Service, the Wrights (if they qualify as insureds) or anyone else seeking coverage because the Plaintiffs in the Underlying Action do not make any claims for damages because of personal and advertising injury as defined in the Policy and even if they did, which is denied, they do not arise out of an offense that arises out of "Private/Personal Chef" operations identified on the Certificate of Coverage for the Policy or "Bartending Services" to the extent "Bartending Services" are considered to be operations;

e.    For a judicial declaration that there is no coverage under the Policy because the Assault and Battery Exclusion excludes coverage for Turral, Turral Food Services, the Wrights (if they qualify as insureds) and any other insured under the Policy for the claims made by the Plaintiffs in the Underlying Actions;

f.    For a judicial declaration that the Liquor Liability Exclusion excludes coverage for Turral, Turral Food Services, or the Wrights (if they qualify as insureds) and any other insured under the Policy for the claims made by the Plaintiffs in the Underlying Actions;

g.    For a judicial declaration that the "Exclusion – Designated Ongoing Operations" Endorsement Excludes Coverage for Turral, Turral Food Services, the Wrights (if they qualify as insureds) and any other insured under the Policy for the claims made by the Plaintiffs in the Underlying Actions;

30

h.      For a judicial declaration that GAAIC has no duty to defend or indemnify Turral, Turral Food Services, the Wrights or any other insured for the claims made by the Plaintiffs in the Underlying Actions; and

i.      GAAIC prays that the Court award it the costs of the action and any such other and further relief as this Court shall deem just and proper.

Respectfully submitted,


s/Jennifer E. Johnsen
Jennifer E. Johnsen (Fed. Bar No. 5427)
Michaela Weaver (Fed Bar. No. 14664)
GALLIVAN, WHITE & BOYD, P.A.
55 Beattie Place, Suite 1200 (29601)
P.O. Box 10589
Greenville, SC  29603
(864) 271-9580
jjohnsen@gwblawfirm.com
mweaver@gwblawfirm.com


Greenville, South Carolina                    Attorneys for Plaintiff Great American Alliance
                                              Insurance Company
May 26, 2026